## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **BARTOOL KHAKSARI,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 06-1990 (RJL)** |
| | ) | |
| **KENNETH Y. TOMLINSON,** | ) | |
| **Chairman, Broadcasting Board** | ) | |
| **of Governors,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

### DEFENDANT'S MEMORANDUM IN OPPOSITION TO
### PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND
### IN SUPPORT OF DEFENDANT'S MOTION TO STRIKE CLASS ALLEGATIONS

This should be a single-plaintiff Title VII case relating to plaintiff's non-selection for three specific positions at the Broadcasting Board of Governors ("BBG"). Plaintiff, who was employed by the BBG under a contract for services between November, 2003, and April, 2005, challenges her non-selection for three positions both during and after her employment as unlawfully discriminatory based on her age, gender, and national origin (Iranian). Plaintiff also claims that the agency retaliated against her for complaining about perceived discrimination by terminating her contract. Complaint, ¶¶ 6, 7, 9, 10.

Plaintiff also alleges that the agency's supposed policy of hiring non-citizens for positions when qualified citizens are available for employment violates 22 U.S.C. § 1474. It is on this claim that she seeks to have the Court certify a class consisting of:

> US citizens who applied for a vacancy at BBG or its predecessor agencies with a duty station in the United States for which they met the minimum qualifications and were passed over in favor of a non-citizen on or after December 1, 1983, the date the selection policy seems to have been adopted.

Pl.'s Mot. For Class Cert. at 3; see also Complaint, ¶¶ 25-29.  Plaintiff asserts that BBG has

"eviscerated" the "statutorily-mandated preference for U.S. citizens under section 1474" which,

in relevant part, provides that the Agency may employ aliens when "suitably qualified United

States citizens are not available." 22 U.S.C. § 1474; Pl.'s Mem. of Points & Auth. in Support of

Mot. For Class Cert., at 7.[1]

      The Court should deny plaintiff's motion for class certification for two main reasons.

First, because citizenship is not a protected category under Title VII, plaintiff cannot state a

claim for herself or putative class members under Title VII.  Second, even if a valid claim

existed, plaintiff's bid for class treatment is barred by her failure to exhaust any class claims at

the administrative phase.  Because class treatment of the claim alleged in the Complaint is

impossible, the Court should strike all of the class allegations from the Complaint.  See Fed. R.

Civ. P. 12(b)(1) and (6); 12(f).

### A.    Standard of Review

      Under Title VII, courts have authority only to hear claims that are (1) contained in the

plaintiff's administrative complaint or claims "like or reasonably related" thereto, and (2) claims

for which the plaintiff exhausted administrative remedies.  Powell v. Castaneda, 390 F. Supp.2d

1, 8 (D.D.C. 2005) (quoting Park v. Howard Univ., 71 F.3d 904, 907 (D.C. Cir. 1995)).  The

Congressional purpose in enacting the Title VII voluntary settlement and conciliatory procedures

illuminates the importance of exhausting the administrative remedies prior to instituting suit in

district court.  "'The principal functions of the EEOC filing requirement' are to enable 'the

_____

[1]  Hereinafter, defendant references Plaintiff's Motion and Memorandum in Support as "Pl.'s
Mot."and notes that the memorandum is not separately numbered from the motion such that all
page references are to those appearing at the bottom of the cited page.

EEOC to provide the alleged wrongdoer with notice and to permit possible conciliation.'"

Medina v. Reinhardt, 686 F.2d 997, 1013 (D.D.C. 1982) (quoting Foster v. Gueory, 655 F.2d

1319, 1323 (D.C. Cir. 1981)). "[T]he exhaustion requirement is intended to give the agency the

opportunity to right any wrong it may have committed." McRae v. Librarian of Congress, 843

F.2d 1494, 1496 (D.C. Cir. 1988).

Title VII's statutory language and legislative history reflect a firm congressional

preference for the resolution of employment discrimination disputes through informal

administrative processes over adjudication in court. As this Court once explained:

> By establishing the EEOC, Congress provided an inexpensive and
> uncomplicated remedy for aggrieved parties, most of whom were poor and
> unsophisticated. Conciliation also was designed to allow a respondent to
> rectify or explain his action without the public condemnation resulting
> from a more formal proceeding. Furthermore, the absence of direct
> government coercion was thought to lessen the antagonism between
> parties and to encourage reasonable settlement. The need for voluntary
> compliance was stressed since more coercive remedies were likely to
> inflame respondents and encourage them to employ subtle forms of
> discrimination.

Kinsey v. Legg Mason & Co., 60 F.R.D. 91, 95 (D.D.C. 1973).

Courts liberally construe factual contentions in charges of discrimination in order to

accomplish the purposes of the Civil Rights Act. Id. at 97. They do so because "[a] large

number of the charges with the EEOC are filed by ordinary people unschooled in the

technicalities of the law . . . ." Evans v. Frito-Lay, 1974 WL 1148 * 5 (N.D. Ohio). Therefore, a

court should determine whether "the scope of the judicial complaint is limited to the scope of the

EEOC investigation which can reasonably be expected to grow out of the charge of

discrimination." Park v. Howard University, 71 F.3d 904, 907 (D.C. Cir. 1995); Kinsey, 60

F.R.D. at 96 (applying the Sanchez v. Standard Brands, Inc., 431 F.2d 455 (5th Cir. 1970), rule).

Nevertheless, courts remain loathe to deprive the alleged wrongdoer of notice and frustrate the purpose of the administrative process. Park, 71 F.3d at 907 (stating that "[a] court cannot allow liberal interpretation of an administrative charge to permit a litigant to bypass the Title VII administrative process."); see Kinsey, 60 F.R.D. at 97 (stating "[i]f parties were given complete freedom to litigate claims of discrimination never presented to the EEOC for investigation and conciliation, it would result in the frustration of the statutory scheme and policies favoring informal persuasion and voluntary compliance."). This is true in class actions, as well as individual cases. See Evans, 1974 WL 1148 at *5. Moreover, a major reason for the solicitude accorded complainants—that most are poor and unsophisticated, see Kinsey, 60 F.R.D. at 95— should apply with significantly less, if any, weight for professionals than for many others, and for those represented by counsel.

## Argument

### A.    Plaintiff Fails to Allege A Valid Claim for the Putative Class Because Citizenship Is Not Protected Under Title VII

Plaintiff's class claim is one for supposed reverse citizenship discrimination. Title VII makes it "an unlawful employment practice for an employer ... to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). For purposes of Title VII, however, citizenship and national origin are distinct concepts. Title VII prohibits only national origin discrimination, not discrimination on the basis of citizenship. Espinoza v. Farah Mfg. Co., U.S. 86, 94 (1973); Nair v. Nicholson, 464 F.3d 766, 767 (7th Cir. 2006) ("Discrimination on the

basis of foreign citizenship is not forbidden by Title VII."); Anderson v. Conboy, 156 F.3d 167, 180 (2d Cir. 1998) (". . . citizenship discrimination is not covered by Title VII");

Plaintiff may not resort to D.C. law because Title VII is the exclusive remedy for employment discrimination for federal employees and applicants, and D.C. law does not contain any valid waiver of the sovereign immunity of the United States in this respect. Brown v. General Services Admin., 425 U.S. 820, 829-32, 835 (1976); Lehman v. Nakshian, 453 U.S. 156, 160-61 (1981) ("[A] waiver of [sovereign] immunity . . . must be 'unequivocally expressed.'"); see also United States v. Nordic Village, 503 U.S. 30, 33-34 (1992); United States v. King, 395 U.S. 1, 4 (1969). Library of Congress v. Shaw, 478 U.S. 310, 318 (1986) (waivers of sovereign immunity are construed "strictly in favor of the sovereign"); GAF Corp. v. United States, 818 F.2d 901, 904 & n.86 (D.C. Cir. 1987) (absent full compliance with the conditions placed upon waiver of sovereign immunity, courts lacks jurisdiction to entertain tort claims against the United States). Because plaintiff's class claim fails to state a claim on which relief may be granted or within an available waiver of sovereign immunity, it should be dismissed. Fed. R. Civ. P. 12(b)(1), (6).[2]

## B.    Plaintiff's Failure to Exhaust Any Class Claim Under Title VII Precludes Proceeding As a Class

---

[2] Even if citizenship were a protected category under Title VII, plaintiff's claim would be invalid because her claim is that she should be favored, and thus others disfavored, because of her citizenship. Title VII prohibits taking adverse actions because of a protected status; it does not provide an advantage.

Based on her reference to "civil rights cases" in her recitation of the "Legal Standards" applicable to her motion, plaintiff appears to seek certification of a class under Title VII. Importantly, beyond the fact that citizenship is not a protected category under the statute, plaintiff is barred from pursuing class certification for Title VII violations because she failed to bring a class claim at the administrative stage. In <u>James v. England</u>, 332 F. Supp. 2d 239 (D.D.C. 2004), this Court summarized the administrative exhaustion requirements for class complaints:

> The Tenth Circuit, discussing the administrative processing of class complaints, noted that 'these class administrative procedures create[] a detailed scheme markedly different than the administrative mechanism for addressing individual discrimination claims.' <u>Gulley v. Orr</u>, 905 F.2d 1383, 1384-85 (10th Cir. 1990); <u>see also</u> <u>Wade v. Sec. Of Army</u>, 796 F.2d 1369, 1373 (11th Cir. 1986). The Court concluded that:
>
>> In light of the distinct administrative mechanism created specifically to address class claims of discrimination, the weight of authority addressing this issue has held that exhaustion of individual administrative remedies is insufficient to commence a class action in federal court; rather, one of the named plaintiffs must have exhausted class administrative remedies.

<u>James</u>, 332 F.Supp.2d at 247 (citations omitted).

Plaintiff did not bring a Title VII class complaint before the EEOC. Instead, she brought an individual complaint alleging discrimination based on sex, age, religion and reprisal for three non-selections. <u>See</u> Complaint of Discrimination dated July 5, 2005 (attached hereto as Exhibit 1); <u>see also</u> Complaint, ¶ 8. As such, she has not exhausted her administrative remedies with regard to a class complaint predicated upon any Title VII bases.

Plaintiff implicitly admits that she failed to exhaust her administrative remedies for class claims at the administrative level by seeking to excuse it by asserting that exhaustion was

unnecessary.  Pl.'s Mem. at 15.  Plaintiff asserts that the agency adopted its current position in or

around 1983, but fails to show, as her quotation from <u>Randolph-Sheppard Vendors of Am. v.</u>

<u>Weinberger</u>, 795 F.2d 90, 105 (D.C. Cir. 1986), requires, that the agency has "demonstrated that

it would be unwilling to reconsider" its policy.  Here, plaintiff offers nothing other than her own

rank speculation about the possibility of the agency reconsidering.  Her own declaration offered

in support of her motion is silent with regard to her own efforts, if any, to seek any

reconsideration of the policy; indeed, she speaks only of feeling perceived as an "outsider," and

the crux of her putative class claim is that she should have been given a preference based on her

status as a citizen.[3]

   Moreover, the holding in <u>Randolph-Sheppard</u> was that the organization was **<u>not</u>** excused

from the administrative exhaustion requirement applicable to their contract claim simply because

it was unlikely that the agency would act favorably.  <u>See</u> <u>Randolph-Sheppard</u>, 795 F.2d at 111

("Appellants have failed to demonstrate adequate grounds upon which the requirement that they

exhaust their administrative remedies should be waived.").  Likewise, plaintiff's motion fails to

provide evidence from which the Court could conclude that exhaustion here would have been

futile or otherwise unnecessary.  In addition, the requirement of exhaustion of class claims in the

employment discrimination context has been strictly observed.  Under the applicable regulations,

a putative class agent is required to seek counseling within 45 days of the alleged

---

[3] In June, 2006, the American Federation of Government Employees Local 1812 filed a grievance over BBF's application of 22 U.S.C. § 1474.  Undersigned counsel has been informed that the grievance is currently scheduled to proceed to an arbitration currently scheduled for May 31, 2007.  Accordingly, defendant admits that it has been on notice since at least June, 2006 of a claim that its policy is unlawful, but not unlawfully discriminatory.  Although the pendency of the grievance arguably satisfies the requirement of administrative exhaustion for some purposes, it should not be substituted for notice of an employment discrimination claim.

discrimination.[4]  As the Supreme Court has instructed, a Title VII claimant must timely pursue

administrative remedies "or lose the ability to recover for it."  National R.R. Passenger Corp. v.

Morgan, 536 U.S. 101, 110 (2002).  Accordingly, the class claims should be dismissed.  See

Torres v. Mineta, Memo. Op. at 12, Civ. No. 04-0015 (GK) (D.D.C., May 13, 2005) (dismissing

Title VII putative class action for untimely EEO counselor contact because plaintiffs had learned

of the allegedly discriminatory policies and practices they were challenging and thus knew, or

should have known, about the alleged discrimination, more than 45 days before they contacted

an EEO counselor).

        This point is underscored by the fact that the selections plaintiff seeks to challenge

occurred over a period of several months in 2004-2005.  See Declaration of Batool [sic]

Khaksari, ¶¶ 4-6.[5]  Plaintiff appears to have been diligent in investigating the causes for her non-

selection, and therefore, should have become aware of the policy sometime in 2004.  Similar to

Torres, plaintiff complains of a policy and practice, here the agency's hiring of non-citizens

when equally or less qualified U.S. citizens are available, that was used by her office many years

before her EEO counselor contact.  See Declaration of Batool [sic] Khaksari, ¶ 11 (agency

adopted current policy sometime after 1983). Yet, plaintiff never brought a class complaint to the

attention of an EEO counselor and only filed an individual complaint of discrimination in

January, 2005.  Id. ¶ 8. Thus, plaintiff's EEO contact was considerably untimely.

_____

[4] 29 C.F.R. § 1614.204(b) makes explicit that the requirements of 29 C.F.R. § 1614.105 apply to administrative class complaints.  29 C.F.R. § 1614.105 (a)(1) requires counseling within 45 days of the alleged discrimination.

[5] Curiously, plaintiff's name in the caption on the Complaint differs from the name on her declaration in support of the motion for class certification.  On the Complaint, the name is "Bartool Khaksari," but on the declaration, the name is "Batool Khaksari."

**C.    Plaintiff Can't Satisfy At Least Some of the Requirements of Fed. R. Civ. P. 23**

The class proposed by plaintiff is unwieldy based on her request to reach back in time over a quarter of a century, the inherent dissimilarities in types of employment (translators, studio technicians, journalists) and the variety of employment actions (hiring, lateral moves and promotions). The myriad dissimilarities—particularly as among the putative plaintiffs themselves—preclude plaintiff from establishing commonality, typicality, and adequacy of representation under Rule 23(a). In addition, the individual nature of the relief being sought by plaintiff on behalf of the class prevents plainitff from meeting the requirements of Rule 23(b).

**1.    Standard of Review**

Class certification is governed by Fed. R. Civ. P. 23, the provisions of which are designed principally to promote the efficient and economical conduct of litigation. American Pipe & Constr. Co. v. Utah, 414 U.S. 538, 553 (1974). A class action generally enables courts "to treat common claims together, obviating the need for repeated adjudication of the same issues." In re General Motors Corp. Pick-up Truck Fuel Tank Products Liability Litigation, 55 F.3d 768, 783 (3rd Cir.), cert. denied, 116 S. Ct. 88 (1995). The class action device is "'an exception to the rule that litigation is conducted by and on behalf of the individual named parties only.'" General Telephone Co. of the Southwest v. Falcon, 457 U.S. 147, 155 (1982) (quoting Califano v. Yamasaki, 442 U.S. 682, 700-701, (1979)).

Rule 23(a) of the Federal Rules of Civil Procedure sets forth four prerequisites to a class action:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the

claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  If these prerequisites are met, a class action may be maintained if, *inter alia*,

> (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole;  or
> (3) the court finds that questions of law or fact common to the members of the class predominate over any questions affecting individualized members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Fed. R. Civ. P. 23(b).  The party seeking class certification bears the burden of proof as to each element.  McCarthy v. Kleindienst, 741 F.2d 1406, 1414 n.9 (D.C. Cir. 1984).  Failure to prove even one of these elements requires dismissal of the class complaint.  Id.; Kas v. Financial General Bankshares, Inc., 105 F.R.D. 453 (D.D.C. 1985); Pendleton v. Schlesinger, 73 F.R.D. 506, 508 (D.D.C. 1977).

Consistent with the exceptional nature of class actions, the Supreme Court has cautioned that class actions may be certified only where a "rigorous analysis has shown that the requirements of Rule 23(a) have been satisfied." Falcon, 457 U.S. at 161.  In other words, "actual, not presumed, conformance with Rule 23(a) [is] . . . indispensable." Id. at 160 (noting potential unfairness to class members bound by unfavorable judgment); see also Wagner v. Taylor, 836 F.2d 578, 594 (D.C. Cir. 1987).  Mere conclusory averments are insufficient to obtain class certification.  See In re American Medical Systems, Inc., 75 F.3d 1069, 1083, 1086 (6th Cir. 1996); Gonzalez v. Brady, 136 F.R.D. 329 (D.D.C. 1991).

Whether to certify a class is within the broad discretion of the trial court.  Fed. R. Civ. P. 23(c)(1); Hartman v. Duffey, 19 F.3d 1459, 1471 (D.C. Cir. 1994).  Further, while in no way a determination of the merits, inspection of "the circumstances of the case is essential to determine whether the prerequisites of  . . . Rule 23 have been met."  Wagner, 836 F.2d at 587; see also Coopers & Lybrand v. Livesay, 437 U.S. 463, 469 (1978) ("class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action"); Rodriquez v. U.S. Dep't of Treasury, 131 F.R.D.1, 8 (D.D.C. 1990) ("an analysis of the nature of the proof which will be required at trial is directly relevant to a determination whether the matters in dispute are principally individual in nature or are susceptible of proof equally applicable to all class members").

A class action complaint must allege "facts from which [a] district court could reasonably infer that the mandatory prerequisites of Fed. R. Civ. P. 23(a) [have] been met," Smith v. Transworld Systems, Inc., 953 F.2d 1025, 1033 (6th Cir. 1992), and deficient class allegations may be struck.  Id.; LCvR 23.1(b) ("A defendant may move at any time to strike the class allegations or to dismiss the complaint.").  As the Supreme Court has instructed, "sometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim . . . ."  Falcon, 457 U.S. at 147. Moreover, the need to state a factually viable claim at the outset of litigation is particularly pressing in class actions where the mere filing of a class complaint creates fiduciary obligations to members of the putative class, upon which putative class members may rely even though a class has not been certified.  United Airlines, Inc. v. McDonald, 432 U.S. 385, 393-94 (1977).

**2.    "Across-the-Board" Allegations of Discrimination Rarely Meet the Requirements for Class Certification Under Rule 23(a).**

As this Circuit has recognized, Rule 23 inquiries in the context of Title VII suits "have presented courts with a peculiar set of problems." Wagner, 836 F.2d at 588. Recognition of the fact that "'racial discrimination is by definition class discrimination,' . . . has left uncertain the degree of permissiveness tolerable in applying the requirements of Rule 23 in Title VII litigation, and has promoted a difference of opinion as to the proper standard for certifying Title VII classes." Id. (quoting Falcon, 457 U.S. at 157). This is no less true of the type of discrimination plaintiff alleges flows from the policy at BBG at the center of her class claims. Prior to the Supreme Court's landmark opinion in Falcon, many courts employed an "'across-the-board" approach to Title VII class certification, in which "any case featuring a proposed class composed of all members of a minority group connected in some fashion with a particular employer is deemed to present common questions of law or fact, regardless of individual variations in terms of discriminatory practices suffered or injuries sustained, merely by virtue of an allegation that racial discrimination had occurred." Id. These courts "permitted a named plaintiff in one job category to represent employees in another job category, or a discharged employee to represent current employees, reasoning that although different members of the class may have been harmed in different ways, 'the Damoclean threat of a racially discriminatory policy hangs over the racial class [and] is a question of fact common to all members of the class.'" Id. (quoting Johnson v. Georgia Highway Express, Inc., 417 F.2d 1122, 1124 (5th Cir. 1969)).

In Falcon, the Supreme Court rejected the "across-the-board" approach, overturning a trial court's certification of a class consisting of both Mexican-American employees who were denied promotions and Mexican-American job applicants who were denied employment. 457 U.S. at 152, 155. The Supreme Court reasoned that the "across-the-board" approach failed to

- 12 -

"evaluate carefully the legitimacy of the named plaintiff's plea that he is a proper class

representative under Rule 23(a)." Id. at 160.  As the Court explained:

> Conceptually, there is a wide gap between (a) an individual's claim that he has
> been denied a promotion on discriminatory grounds, and his otherwise
> unsupported allegation that the company has a policy of discrimination, and (b)
> the existence of a class of persons who have suffered the same injury as that
> individual, such that the individual's claim and the class claims will share
> common questions of law or fact and that the individual's claim will be typical of
> the class claims.  For [the plaintiff] to bridge that gap, he must prove much more
> than the validity of his own claim.  Even though evidence that he was passed over
> for promotion when several less deserving whites were advanced may support the
> conclusion that [the plaintiff] was denied the promotion because of his national
> origin, such evidence would not necessarily justify the additional inferences (1)
> that this discriminatory treatment is typical of [the defendant's] promotion
> practices, (2) that [the defendant's] promotion practices are motivated by a policy
> of ethnic discrimination that pervades [the plaintiff's work site], or (3) that this
> policy of ethnic discrimination is reflected in [the defendant's] other employment
> practices, such as hiring, in the same way it is manifested in the promotion
> practices.

Id. at 157-58.  Accordingly, the Court held that, "a Title VII class action, like any other class

action, may only be certified if the trial court is satisfied, after a rigorous analysis, that the

prerequisites of Rule 23(a) have been satisfied."  Id. at 160.

While criticizing the presumption of commonality and typicality inherent in the "across-

the-board" approach, the Supreme Court nevertheless recognized two situations in which

"across-the-board" classes might be appropriate:

> If [the defendant] used a biased testing procedure to evaluate both applicants for
> employment and incumbent employees, a class action on behalf of every
> applicant or employee who might have been prejudiced by the test clearly would
> satisfy the commonality and typicality requirements of Rule 23(a).  Significant
> proof that an employer operated under a general policy of discrimination
> conceivably could justify a class of both applicants and employees if the
> discrimination manifested itself in hiring and promotion practices in the same
> general fashion, such as through entirely subjective decisionmaking processes.  In
> this regard, it is noteworthy that Title VII prohibits discriminatory employment
> *practices,* not an abstract policy of discrimination.  The mere fact that an

- 13 -

> aggrieved plaintiff is a member of an identifiable class of persons of the same race or national origin is insufficient to establish his standing to litigate on their behalf all possible claims of discrimination against a common employer.

457 U.S. at 158, n. 15 (emphasis in original).  Thus, "across-the-board" class actions cannot even "*conceivably*" be maintained unless they meet the stringent standards set forth in <u>Falcon</u>. (emphasis added).

Plaintiff's Complaint attempts to survive dismissal by relying on <u>Falcon</u>'s reference to a class challenging essentially a "biased testing procedure."  However, plaintiff's effort is flawed by the inherent difficulty in identifying exactly when the guidance in the cited BBG policy was actually invoked.  By its terms, the policy only directs managers to fill positions with non-citizens when there is no equally or better qualified U.S. citizen available to fill the position. The evaluation of the relative qualifications for positions involves both objective and subjective elements, and the proposed class includes both applicants for employment and for promotion. These attributes are not well-suited to class treatment by nature.

**3.      Plaintiff's Claims Lack Commonality and Typicality.**

The commonality and typicality requirements of Rule 23 "tend to merge."  <u>Falcon</u>, 457 U.S. at 157 n.13.  "Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."  <u>Id.</u>  As to commonality, this Circuit has interpreted <u>Falcon</u> as follows:  "What the Court demands from those seeking certification of a class cutting across employment status or job categories is a 'specific presentation' identifying the questions

- 14 -

of law or fact common to the class representative and the members of the class proposed."

Wagner, 836 F.2d at 589 (quoting Falcon, 457 U.S. at 158). Indeed,

> [a]s Falcon made clear, there is more to a showing of commonality than a
> demonstration that class plaintiffs suffered discrimination on the basis of
> membership in a particular group . . . . [A] plaintiff need not isolate the particular
> practice and prove that such practice *caused* the discrimination, [but] plaintiffs
> must make a significant showing to permit the court to infer that members of the
> class suffered from a common policy of discrimination that pervaded all of the
> employer's challenged employment decisions.

Hartman, 19 F.3d at 1472. See also Bynum v. District of Columbia, 217 F.R.D. 43, 46-47

(D.D.C. 2003) ("a single aspect or feature of the claim must be common to *all* proposed class

members.") (emphasis added).

At the outset, it is important to recognize that plaintiff makes no effort to limit the class

to any specific job category, grade level, or reasonable time period. That the policy exists and

that both citizens and non-citizens have competed for positions and promotions is not enough on

its own. The D.C. Circuit has rejected "the common threat of discrimination that confronts all

members of the class" as plainly insufficient to establish commonality. See Wagner, 836 F.2d at

593; compare Vuyanich v. Republic Nat'l Bank of Dallas, 723 F.2d 1195, 1199-1200 (5th Cir.

1984) ("The district court's finding that the Bank relied on two objective inputs—education and

experience— in its necessarily subjective hiring process . . . precludes reliance on this 'general

policy of discrimination' exception"); Wilkins v. University of Houston, 654 F.2d 388, 409 n.37

(5th Cir. 1981) ("[W]hile we . . . do not decide the question, it may be that claims of

[discrimination] with respect to . . . positions requiring diverse and specialized qualifications

relating to education and work experience simply are inappropriate claims for class actions that

rely on statistical proof.") (cited with approval in Valentino v. U.S. Postal Service, 674 F.2d 56,

- 15 -

67 (D.C. Cir. 1982)); <u>Garcia v. Veneman</u>, 211 F.R.D. 15, 20 & n. 4 (D.D.C. 2002) ("where, as here, a number of objective factors guide the decision-making process, the proposed class fits less neatly into the *Falcon* exception."); <u>Int'l Union v. LTV Aerospace & Defense Co.</u>, 136 F.R.D. 113 (N.D. Tex. 1991) (fact that collective bargaining agreement covered some of the decision-making process precluded finding that process was entirely subjective).

The vast number of employment decisions potentially at issue if the Court went all the way back to 1983 would implicate scores of managers and resolution of any claim of discrimination by any purported member of the putative class would require a "highly individualized" factual inquiry.  <u>See</u> <u>McCarthy v. Kleindeinst</u>, 741 F.2d 1406 (D.C. Cir. 1984) ("serious drawbacks to the maintenance of a class action are presented where initial determinations, such as the issue of liability vel non, turn upon highly individualized facts"). In short, plaintiff cannot possibly meet her burden of making a specific presentation of issues of law or fact common to all class members of the proposed "across-the-board" action, as required under Rule 23(a)(2).  This failure, in and of itself, dooms her request for certification.

**4.    The Named Plaintiff Is Not An Adequate Class Representative**.

Finally, Plaintiff must show that she will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).   To satisfy this requirement, a "class representative must be part of the class and possess the same interest and suffer the same injury as the class members." <u>Rodriguez</u>, 431 U.S. at 403.  As this Circuit has explained, "[b]asic consideration of fairness require[s] that a court undertake a stringent and continuing examination of the adequacy of representation by the named class representatives at all stages of the litigation where absent members will be bound by the court's judgment."  <u>National Ass'n for Mental Health, Inc. v.</u>

Califano, 717 F.2d 1451, 1457 (D.C. Cir. 1983).  In evaluating whether a named plaintiff will

fairly and adequately protect the interests of the class members, this Circuit has "considered two

principal requirements:  1) the named representative must not have antagonistic or conflicting

interests with the unnamed members of the class, and 2) the representatives must appear able to

vigorously prosecute the interests of the class through qualified counsel."  Id. at 1458.  See also

Wagner, 836 F.2d at 595-96.

      At the outset, the named plaintiff does not possess the same interest as the absent class

members.  For one thing, plaintiff's class complaint ignores the distinct possibility that more

than one class member could have competed for hiring for any given selection.  As a result, the

putative class members may have conflicts within their midst.  Moreover, defendant's answer at

least suggests that the evidence will show that for the three non-selections involving plaintiff at

issue in this case, plaintiff was not selected because there were more qualified applicants for the

same positions.  The Supreme Court in Rodriguez made clear that, where named plaintiff's

individual claims lack merit, such a plaintiff is not a "member[] of the class of discriminatees

they purported to represent" and therefore cannot "'fairly and adequately represent the interests

of the class.'"  431 U.S. at 403-06.  See also Everitt v. City of Marshall, 703 F.2d 207, 211 (5th

Cir.), cert. denied, 464 U.S. 894 (1983) (upholding denial of certification where class

representative's claims were dismissed at trial; once dismissal occurred, class representative no

longer was "a member of the class of discriminatees" she sought to represent, and therefore was

ineligible to represent the class).

      Plaintiff's motion does not contain any information about the qualifications of her

existing counsel to undertake a Title VII class action.  In particular, there is no information about

- 17 -

his or his firm's previous experience in handling class actions.  Defendant would note that plaintiff's attorney(s) already have made a number of errors which at least call into question their competency to prosecute a Title VII class action.  Specifically, counsel has improperly failed to exhaust the class claims administratively, and included in the Complaint requests for relief in the form of punitive damages and under D.C. law which are plainly not available against a federal employer.  They have also included within the definition of a class, members both over and under the age of 40 years (Complaint, ¶ 45) notwithstanding that only persons over the age of 40 would qualify for claims under the ADEA.  In addition, they have identified a class of people not covered at all by Title VII.  For all these reasons, plaintiff cannot carry her burden of showing that she would fairly represent the interests of the class.  Thus, plaintiff's class claims also fail under Rule 23(a)(4).

### 5.    Rule 23(b)(2) Is Not Satisfied

Furthermore, plaintiff has sought, as a component of the relief, monetary damages in the form of compensatory damages, back pay, front pay, interest, and lost job benefits.  <u>See</u> Compl., Prayer for Relief, ¶ F, G, H.  Because a showing of liability would not automatically entitle any potential class member to back pay, front pay or lost job benefits, determining the amount of damages to which potential class members are entitled would require numerous individualized inquiries and destroy the efficiency of the class mechanism.  <u>See</u> <u>Eubanks v. Billington</u>, 110 F.3d 87, 95 (D.C. Cir. 1997) ("the underlying premise of (b)(2) certification—that the class members suffer from a common injury that can be addressed by classwide relief—begins to break down when the class seeks to recover back pay or other forms of monetary damages to be allocated based on individual injuries.").  Indeed, because plaintiff estimates the size of the class to be in

the realm of 50 people per year over a period of nearly 25 years, Khaksari Dec. ¶ 15, numerous individualized inquiries would be required to establish that class members actually had been damaged to an extent justifying specific monetary relief incidental to any equitable relief.  For these reasons, plaintiff cannot satisfy the requirements of Rule 23(b)(2), and the class claims should be stricken.

### 6.    Punitive Damages Are Unavailable As a Matter of Law

Paragraph I of the Prayer for Relief in the Complaint seeks a half million dollars of punitive damages for each U.S. citizen class member.  Punitive damages are not available as a matter of law.  Cf. 28 U.S.C. § 2674 (punitive damages prohibition in the Federal Tort Claims Act).  Plaintiff has failed to identify any statute applicable to a federal agency which provides a waiver of sovereign immunity for the recovery of punitive damages.

Plaintiff includes a reference to 42 U.S.C. § 1981 in her Complaint.  See Complaint, ¶ 37. This paragraph is specifically excluded from the class claims.  See Complaint, ¶ 43 (incorporating by reference only paragraphs 1-29 into the class claims).  Nevertheless, it is clear that plaintiff may not rely on section 1981 in this case.  In Brown v. General Services Administration, the plaintiff was a federal employee who, like plaintiff in the instant case, sought relief for alleged discrimination under 42 U.S.C. § 1981.  The Supreme Court dismissed the plaintiff's claim under 42 U.S.C. § 1981 after concluding that Congress unambiguously intended to create "*an exclusive, pre-emptive administrative and judicial scheme for the redress of federal employment discrimination* " when it enacted 42 U.S.C. § 2000e-16 in 1972. Brown, 425 U.S. at 828-29 (emphasis added); accord Kizas v. Webster, 707 F.2d 524 (D.C. Cir. 1983).

Congress confirmed the non-availability of section 1981 as a procedural vehicle for the assertion of discrimination claims by federal employees when Congress amended Title VII in 1991. The plain language of those amendments makes clear that section 1981 does not apply to the federal government or to its employees acting within the scope of their employment. See Davis-Warren Auctioneers, J.V. v. FDIC, 215 F.3d 1159, 1162 (10th Cir. 2000); Davis v. United States Dep't of Justice, 204 F.3d 723, 725-26 (7th Cir. 2000) (finding that the language of §1981(c) precludes application of the statute to alleged discrimination under color of federal law); Lee v. Hughes, 145 F.3d 1272, 1277 (11th Cir. 1998), cert. denied, 525 U.S. 1138 (1999); Williams v. Glickman, 936 F. Supp. 1, 34 (D.D.C. 1996). Because plaintiff's complaint alleges discrimination in the context of federal employment, and therefore done under color of federal law, appellant's claims under section 1981 are precluded by the "exclusive judicial remedy for claims of discrimination in federal employment" provided by Title VII. Moreover, section 1981 outlaws *racial* discrimination in the making and enforcement of private contracts. Murrell v. Ocean Mecca Motel, Inc., 262 F.3d 253, 257 (4th Cir. 2001); Pavon v. Swift Transp. Co., 192 F.3d 902, 908 (9th Cir. 1999).[6] One court has described the motivating factor of race as "the essential element" of a section 1981 action. Mian, 7 F.3d at 1087. The scope of a section 1981 claim is thus confined to racial discrimination; discrimination based on citizenship is not actionable under that statute. Cf. Runyon v. McCrary, 427 U.S. 160, 168 (1976) (section 1981

---

[6] See also Hampton v. Dillard Dep't Stores, Inc., 247 F.3d 1091, 1101 (10th Cir. 2001); Rutstein v. Avis Rent-A-Car Sys., Inc., 211 F.3d 1228, 1235 (11th Cir. 2000), cert. denied sub nom. Zeirei Agudath Israel Bookstore v. Avis Rent-A-Car Sys., Inc., 121 S.Ct. 1354 (2001); Green v. State Bar of Tex., 27 F.3d 1083, 1086 (5th Cir. 1994); Mian v. Donaldson, Lufkin & Jenrette Sec. Corp., 7 F.3d 1085, 1087 (2d Cir. 1993) (citing Baker v. McDonald's Corp., 686 F. Supp. 1474, 1481 (S.D. Fla. 1987), aff'd 865 F.2d 1272 (11th Cir. 1988)).

"is in no way addressed to such categories of selectivity" as sex and religion."); see also Saint Francis College v. Al-Khazraji, 481 U.S. 604 (1987).

Similarly, for a section 1981 retaliation claim to be actionable, the alleged retaliation must be in response to the assertion of rights that are protected by section 1981, *i.e.* race-related rights. See, e.g., Choudhury v. Polytechnic Institute of New York, 735 F.2d 38, 43-44 (2d Cir. 1984). ("In our case § 1981 is being used to proscribe retaliation for asserting rights protected by § 1981 itself."); see also Manning v. Metropolitan Life Insurance Co., 127 F.3d 686, 689 (8th Cir. 1997) (gender-based retaliation is not cognizable under § 1981). Simply stated, an allegation of retaliation for engaging in activity protected by Title VII does not give rise to a claim for retaliation that is cognizable under § 1981 unless that activity was also protected by § 1981. E.g., Hawkins v. 1115 Legal Serv. Care, 163 F.3d 684, 693 (2d Cir. 1998). Accordingly, plaintiff's reliance on section 1981 is misplaced.

- 21 -

## CONCLUSION

For the foregoing reasons, plaintiff's motion for class certification should be denied and all class allegations should be stricken from the Complaint. A proposed order is attached to defendant's motion to strike the class allegations from the Complaint.

Dated: May 17, 2007.

Respectfully submitted,

_____
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney

  /s/
_____
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney

  /s/
_____
JANE M. LYONS, D.C. Bar # 451737
Assistant United States Attorney
555 4th Street, N.W. - Room E4822
Washington, D.C. 20530
(202) 514-7161
(202) 514-8780 (facsimile)