UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BATOOL KHAKSARI )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>Chairman, Broadcasting Board of )<br>Governors,[1] )<br>)<br>Defendant. )<br>_____ ) | Civil Case No. 06cv1990 (RJL) |

MEMORANDUM OPINION
(February _11_, 2010) [# 35]

Plaintiff Batool Khaksari ("Khaksari" or plaintiff) has sued the Chairman of the Broadcasting Board of Governors ("BBG") alleging a hostile work environment and discriminatory non-selection in violation of Title VII of the Civil Rights Act of 1964[2] ("Title VII"), the Age Discrimination in Employment Act[3] ("ADEA"), and various other federal statutes. The case is now before the Court on the BBG's Motion for Summary Judgment. Upon consideration of the pleadings, the applicable law, and the entire record herein, the BBG's Motion is GRANTED.

---

[1] Plaintiff's suit originally named as defendant Kenneth Y. Tomlinson, in his official capacity, as Chairman of the Broadcasting Board of Governors. Pursuant to Federal Rule of Civil Procedure 25(d), if a public officer named as a party to an action in his official capacity ceases to hold office, the court will automatically substitute that officer's successor. Tomlinson was succeeded by James K. Glassman, who has since left the office with no named successor.

[2] 42 U.S.C. § 2000e *et seq.*

[3] 29 U.S.C. § 623 *et seq.*

## BACKGROUND

Khaksari was born in Iran in 1951. (Def. Mot. Ex. 1 ("Khaksari Dep.") at 5 of 71.) She came to the United States in 1981 and became a United States citizen roughly ten years later. (*Id.* at 5. *But see* Pl.'s Counterstatement of Material Facts ("Pl.'s Facts") ¶ 3 (stating date of citizenship as 1989).) A lawyer by trade, Khaksari received her law degree in Iran, where she practiced for a few years before immigrating to the United States. (Pl.'s Facts ¶ 3.)

Once here, Khaksari found work as a parole officer in Maryland and a copyright specialist at the Library of Congress. (*Id.* ¶ 4.) Additionally, Khaksari furthered her education by taking classes at University of Maryland School of Law and earning a master's degree in Criminology from Coppin State University. (Khaksari Dep. at 6-8.) None of Khaksari's education, however, included formal training in journalism, which of course was the nature of her work at the BBG. (*Id.* at 9-10.)

Khaksari began working for the BBG sometime around mid-2003 as a Purchase Order Vendor ("POV"), i.e., contract employee. (Pl.'s Facts ¶ 5.) Because she is fluent in Farsi, she worked primarily as a translator for the Persian Service of the BBG's Voice of America. (Pl.'s Facts ¶¶ 2, 5.) Although Khaksari performed this work on BBG's premises and used equipment supplied by the BBG, (*id.* ¶ 7), she understood her position as a POV contractor to be like that of an independent contractor. (Khaksari Dep. at 14, 36.)

Khaksari soon encountered difficulty getting along with two other women who worked near her in the Persian Service. (Khaksari Dep. at 28-31, 35-38.) Notwithstanding that problem, Khaksari applied for three vacant permanent employment positions at the BBG. She was not selected for any of them. (Pl.'s Facts ¶¶ 9-10, 26, 28-29.) In April 2005, roughly a year and a half after she started at the BBG, the agency sent Khaksari a letter informing her that her POV contract would not be renewed. (Def. Mot. Ex. 15.)

Khaksari then filed this suit in November 2006. Initially, she sought to bring a class action on behalf of all United States citizens who had been denied employment at the BBG in favor of non-citizen applicants. After the Court denied her class certification motion, however, the parties engaged in discovery. In August 2009, the Court granted the BBG's motion to dismiss Khaksari's administrative law claim regarding the BBG's policy towards hiring citizens and non-citizens. *Khaksari v. Tomlinson*, Civ. No. 06-1990, 2009 WL 2407410 (D.D.C. Aug. 5, 2009). The BBG now moves for summary judgment on Khaksari's remaining discrimination claims.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of demonstrating the

absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party opposing a motion for summary judgment must "not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

To determine whether there is a genuine issue of material fact, the Court must draw all justifiable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The non-moving party must produce more than the "mere existence of a scintilla of evidence" to demonstrate triable issues of fact, however. *Id.* at 252. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (citations omitted). In sum, the non-movant must offer "evidence on which the jury could reasonably find for the [non-movant]." *Id.* at 252.

## ANALYSIS

Khaksari has raised a number of different claims arising from her work for the BBG. Her hostile work environment claim is based primarily on the verbal conflicts she had with the two women seated near her workplace. Khaksari also alleges retaliatory non-renewal of her POV contract. Finally, Khaksari claims that her non-selection for three job vacancies was discriminatory.[4] Unfortunately for Khaksari, she fails in each

---

[4] Khaksari's additional claims, brought under 42 U.S.C. §§ 1981 and 1983, the laws of the District of Columbia, and 5 U.S.C. § 2302(b), must also fail. Defendant is correct that 42 U.S.C. §§ 1981 and 1983 are of no help to Khaksari because they apply only to *state* officials, not federal defendants like the BBG. *See Strong-Fisher v. LaHood*, 611 F. Supp. 2d 49, 52-54

instance to meet the necessary evidentiary standard to survive defendant's motion. How so?

## I. Hostile Work Environment

Khaksari argues that she was "the victim of a notorious campaign of office harassment" and that she was subjected to "open, persistent heckling and taunts at her desk." (Pl.'s Opp'n at 7.) What these claims appear to be based on is the conduct of two Iranian women with whom Khaksari worked. Khaksari claims these women "gossip[ed]" about her within her earshot, "used false language," and "started rumoring." (Khaksari Dep. at 28-29, 35.) These women—one a POV contractor like herself—called Khaksari a "prostitute" and told her they would "push [her] to Khomeini's ass" if they could not push her out of the BBG. (*Id.* at 30, 36). Khaksari claims she reported this behavior to a BBG supervisor her second to last day as a contractor for the BBG. (*Id.* at 30-31.)

In response, the BBG contends that, notwithstanding the fact that these statements amount to little more than non-actionable "workplace annoyances and petty slights," Khaksari cannot bring Title VII or ADEA harassment claims because she was an

---

(D.D.C. 2009) (§ 1981), *Keller v. Embassy of the United States*, 522 F. Supp. 2d 213, 218 (D.D.C. 2007) (§ 1983). Moreover, Khaksari has failed to argue, let alone demonstrate, that the Court has jurisdiction over her claims under the laws of the District of Columbia; nothing in the record suggests that the BBG, a federal agency, has waived sovereign immunity as to these claims. *See FDIC v. Meyer*, 510 U.S. 471, 475 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit.") Finally, Khaksari's Civil Service Reform Act claim, brought under 5 U.S.C. § 2302(b), appears to be coextensive with her administrative challenge already dismissed for lack of jurisdiction in *Khaksari v. Tomlinson*, Civ. No. 06-1990, 2009 WL 2407410 (D.D.C. Aug. 5, 2009).

independent contractor rather than a BBG employee.[5] (Def. Mot. at 21-22.) Independent contractors are not protected under either of these statutes. *Zhengxing v. Nathanson*, 215 F. Supp. 2d 114, 116-17 (D.D.C. 2002) (noting that Title VII applies to employees but not independent contractors); *Sherwood v. Evans*, 422 F. Supp. 2d 181, 184 (D.D.C. 2006) (noting the same with respect to the ADEA). I agree.

To determine the true nature of Khaksari's employment, the Court must look to the twelve-factor test developed in *Spirides v. Reinhardt*, 613 F.2d 826 (D.C. Cir. 1979). Under this test, the first and most important factor is "the extent of the employer's right to control the 'means and manner' of the worker's performance." *Id.* at 831. The remaining eleven factors are:

> (1) the kind of occupation, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the particular occupation; (3) whether the "employer" or the individual in question furnishes the equipment used and the place of work; (4) the length of time during which the individual has worked; (5) the method of payment, whether by time or by the job; (6) the manner in which the work relationship is terminated; i.e., by one or both parties, with or without notice and explanation; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the "employer"; (9) whether the worker accumulates retirement benefits; (10) whether the "employer" pays social security taxes; and (11) the intention of the parties.

---

[5] Defendant correctly notes that Khaksari's harassment claim is not barred by the fact that it was not raised as an independent count in her First Amended Complaint. (Def. Mot. at 21.) Khaksari's complaint generally alleges "harassment and abusive conduct," and both parties have briefed the merits of the claim, so the Court will consider it as a free-standing claim. *Cf. Holmes-Martin v. Leavitt*, 569 F. Supp. 2d 184, 191 (D.D.C. 2008) (addressing a hostile work environment claim even though it was not plead as a separate count in the complaint).

*Id.* at 832.

Here, the balance of factors clearly weighs in favor of Khaksari being an independent contractor. Khaksari was hired under a POV contract, based on her specialized language skills, for the purpose of performing translations for the BBG. (Khaksari Dep. at 14.) Her contract was explicitly "[c]ontingent upon the availability of [the next fiscal year] funding." (Def. Mot. Ex. 8.) Khaksari did not receive medical insurance or participate in the federal retirement system; she did not accrue annual leave, was paid on a per assignment basis, and treated as an independent contractor for tax purposes. (*Id.*) While Khaksari did perform her work on the BBG premises, with equipment furnished by the BBG, she considered herself an "expert" and an "independent worker" and was not supervised closely. (Khaksari Dep. at 36.) Finally, Khaksari's relationship with the BBG ended after a year and a half, with no notice, when she received a letter stating that her contract had expired and would not be renewed. (Def. Mot. Ex. 15.)

Not surprisingly, a different judge of this Court came to the same conclusion on nearly identical facts in an unrelated case. In *Zhengxing*, Judge Urbina held that another POV contractor who provided translation expertise to the BBG was not an employee for Title VII purposes. 215 F. Supp. 2d at 117-20. In that case, like here, the only factor tending to suggest an employment relationship was the fact that the plaintiff performed work on the BBG's premises with equipment furnished by the agency. *Id.* at 118.

Nevertheless, Judge Urbina concluded that the *Zhengxing* plaintiff was not an employee because all the remaining factors tended to demonstrate and independent contractor relationship. *Id.* at 118-20. Khaksari fails to cite any relevant authority that might warrant a different analysis. As such, there is no triable issue of fact under Title VII and the ADEA, and Khaksari's hostile work environment claims under these statutes must be dismissed at this stage.[6]

## II.   Non-Selection for Three Vacant Permanent Employment Positions

Khaksari also claims that the BBG rejected her applications for permanent employment on three occasions for discriminatory reasons, thereby violating Title VII and the ADEA. The BBG responds with legitimate, non-discriminatory reasons for its decisions. I agree with the BBG.

In cases like these, the Court's task is to resolve one central question: "Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race, color, religion, sex, or national origin [or age]?" *Brady v. Office of the Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008) (Title VII); *see also Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C.

---

[6] Based on the same *Spirides* analysis, Khaksari has no actionable claim based on the non-renewal of her POV contract. Her attempts to cast the non-renewal as retaliatory or discriminatory are to no avail because her work as an independent contractor was not protected under Title VII or the ADEA. *See Zhengxing*, 215 F. Supp. 2d at 116-17; *Sherwood*, 422 F. Supp. 2d at 184.

Cir. 2008) (applying *Brady* framework to ADEA claim). For the following reasons, it is clear Khaksari has not done so.

First, Khaksari alleges that the BBG discriminated against her when it rejected her for a GS-12 Programming Research Coordinator position. (Pl.'s Opp'n at 29-31.) She bases this claim, in part, on the fact that the person selected for the position, Mr. Davidi, is a non-Muslim man who was under the age of 40 at the time of the selection; Khaksari was a Muslim woman over the age of 50. (Khaksari Decl. ¶¶ 1, 9.) Putting aside the fact that Davidi was already performing the same job on a temporary basis when he was selected for the permanent position, (Khaksari Dep. at 60), the BBG's memorialization of its hiring process for this position leaves little doubt that the decision was based on Davidi's superior qualifications rather than Khaksari's religion, sex, or age. (Def. Mot. Ex. 9 ("Rationale Letter").)

Indeed, when the BBG evaluated Davidi and Khaksari's qualifications with respect to the position's requisite knowledge of contemporary political relations between the United States, Iran, and the greater Middle East, it gave greater weight to Davidi's contacts with policy experts and government officials than it did to Khaksari's work as a lawyer in Iran during the 1970s. (*Id.* at 2.) With respect to television broadcasting experience, Davidi's recent work as a writer, on-scene reporter, anchor, interviewer, and producer of a two-hour television series on Iranian affairs was reasonably considered to be more significant than Khaksari's work as a lawyer in the 1970's and her self-professed

public speaking skills. (*Id.* at 3.) If that weren't enough, the agency documented similar disparities between Davidi and Khaksari in three additional categories of requisite knowledge, skills, and abilities. (*Id.* at 3-4.)

Simply put, Khaksari's argument that the BBG's rejection of her application for this GS-12 position was discriminatory is utterly unsupported by the record.[7] Thus, given the insufficient evidence on which a jury could find that the BBG discriminated against Khaksari in this instance, the claim cannot proceed.

Next, Khaksari alleges that the BBG discriminated against her when it rejected her for a GS-11 International Broadcaster position, even though she failed to meet the minimum language requirements of the job. (Pl.'s Opp'n at 31-32.) To support its explanation that Khaksari was unqualified for the position, the BBG offers a host of evidence concerning the required language test which Khaksari failed. This evidence includes the letter Khaksari received from the BBG informing her of the results, (Def. Mot. Ex. 6), and even Khaksari's own admission that she failed (Khaksari Dep. at 64-65.) In contrast, Khaksari offers no credible evidence to support her argument that the BBG

---

[7] Khaksari's reliance on Ibrahim BiParva's affidavit is misplaced. (Pl.'s Facts ¶ 11.) BiParva's statement speaks to *his* non-selection for the GS-12 Programming Research Coordinator position, not Khaksari's. In fact, BiParva says "[w]hether [Khaksari's supervisors] discriminated against Ms. Khaksari, *I do not have the slightest idea.*" (Pl.'s Opp'n Ex. 25 at 3 (emphasis added).) Additionally, the Court gives little weight to a second affidavit cited by Khaksari because Nader Kay's discussion of perceived favoritism at the BBG for Davidi is no more than unattributed, secondhand hearsay. (*See id.* Ex. 26 at 2-3.) Tellingly, the most reliable evidence that Khaksari offers actually confirms the BBG's stated rationale for her non-selection: an email among BBG officers which states "[t]here is nothing in the file to indicate that the [sic] there was any intervention or interest in [Davidi's] selection by . . . anyone other than the selecting official." (*Id.* Ex. 3.)

failed her on purpose in order to justify her non-selection. Instead, she merely points to her self-serving declaration and to the declaration of a test-grader who she claims had some role in fixing her test results. (Pl.'s Facts ¶ 22-24). This test-grader, however, swore in an earlier affidavit that "the identity of the test-takers is unknown to the readers" and that he did not know if he actually read Khaksari's test. (Pl.'s Opp'n Ex. 25 at 3.) More importantly, Khaksari has failed to specify what impermissible animus caused her non-selection for this position considering that the two people selected in her stead were both Muslim women within ten years of her own age. (Khaksari Dep. at 67-68.)

Finally, Khaksari cannot pursue her claim that she was discriminated against when rejected for a GS-12 International Broadcaster position because she was not available to be selected for it. When Khaksari first applied for this vacant job posting in April 2005, she had the fifth-highest qualification score of all applicants. (Def. Mot. Ex. 17.) Only the top three applicants were eligible for selection, however, so Khaksari could not have gotten this position based on her first application. (Def. Mot. Ex. 5 at 5.) It turned out, nonetheless, that none of the applicants were selected for this position on its first posting, and Khaksari received a letter informing her that the vacancy would not be filled as advertised. (Khaksari Dep. at 62.) Although the vacancy was subsequently reposted, Khaksari never re-applied. (*Id.*) Thus, this claim must fail in light of Khaksari's decision not to apply for the re-posted position and her initial application score which rendered her ineligible in any event.

## CONCLUSION

For all of the above reasons, defendant's Motion for Summary Judgment is GRANTED. An appropriate Order and Judgment will accompany this Memorandum.

_____
RICHARD J. LEON
United States District Judge